### DEASON v. BRYANT.

#### No. 4946.

Court of Civil Appeals of Texas. Beaumont.

Dec. 3, 1953.

Rehearing Denied Dec. 28, 1953.

Musslewhite & Thompson, McFarland & Dale, Lufkin, for appellant.

Ward R. Burke, James A. Morris, Lufkin, for appellee.

R. L. MURRAY, Chief Justice.

This is an appeal from a judgment and order of the district court of Angelina County overruling the plea of privilege of Fairbanks Deason, the appellant.

The appellee, Judge Bryant, sued Deason, a resident of Trinity County, and one Jesse Clay, alleged to be a resident of Angelina County, in the district court of Angelina County for damages for personal injuries received by Bryant when Clay shot him with a pistol in an altercation in a night club in Trinity County. He alleged that Deason was the owner and operator of the night club, that Clay was employed as a bouncer in the night club, and that Clay was the agent, servant and employee of Deason in all the matters complained of against Clay.

Both Clay and Deason filed pleas of privilege to be sued in Trinity County. The plea of Clay did not allege that he was a resident of Trinity County, nor did

it allege that he was not a resident of Angelina County, where the suit was brought. By this plea Clay only contended that the allegations of the petition showed that the acts complained of showed a crime or trespass which occurred in Trinity County, and therefore venue should be laid in Trinity County where such acts complained of took place. This plea of Clay was over-ruled by the trial court on July 27, 1953, and filed August 3, 1953. Clay gave notice of appeal from such action of the court, but the time for filing his transcript and statement of facts in this court has long ago expired and the appeal has not been perfected. Venue of appellee's suit against Clay is fixed in Angelina County.

The appellee filed controverting affidavit to the plea of privilege of appellant Deason, and in such affidavit incorporated his original petition and stated that the allegations in the petition were true and correct, specially denied Deason's allegation that Clay was not his agent, alleged that Clay resided in Angelina County, stated that the suit was brought in the county of the residence of one of two defendants sued, and added, "thereby bringing this cause of action within section 3 of article 1995, Vernon's Civil Statutes of the State of Texas." Appellee states in his brief that "section 3" is obviously a typographical error, that in his affidavit and his original petition he alleged matters which show he is relying upon Section 4 of Article 1995, Vernon's Ann.Civ. Statutes, the venue statute. We believe this is correct, and the pleadings of his petition and affidavit show that he is relying on said Section 4, which provides in part as follows:

"4. Defendants in different counties.— If two or more defendants reside in different counties, suit may be brought in any county where one of the defendants resides. * * * *"

■ Where a plaintiff has pleaded and proved facts sufficient to come within one of the exceptions set out in the venue statute, and erroneously classifies such facts under a different exception, he may main-tain venue under the proper exception shown by the facts pleaded and proved. American Casualty & Life Co. v. Robinson, Tex.Civ.App., 220 S.W.2d 204, and cases cited; Longhorn Trucks v. Bailes, Tex.Civ. App., 225 S.W.2d 642.

■ The petition of appellee pleaded a cause of action against both Clay and Deason. Under the holdings in Stockyards National Bank v. Maples, 127 Tex. 633, 95 S.W.2d 1300, and Atlas Roofing Co. v. Hall, 150 Tex. 611, 245 S.W.2d 477, the appellee therefore sustained venue in Angelina County against Deason, the non-resident defendant, if he proved a case against Clay, the resident defendant. Of course, he would be required in doing so to prove that Clay was a resident of Angelina County. Under Stockyards National Bank v. Maples, supra, and Atlas Roofing Co. v. Hall, supra, and Beatty v. Hoefs, Tex.Civ. App., 229 S.W.2d 430, appellee was not required to make any proof of Clay's agency or employment by Deason on the hearing of the plea of privilege. Venue and not liability was the issue as to Deason.

On such hearing the appellee did make proof of a cause of action against Clay, without any doubt.

Appellant Deason contends that appellee made no proof that Clay was a resident of Angelina County; that what proof he did offer was incompetent, improperly received over his objection, and insufficient to support the trial court's finding that Clay was a resident of Angelina County at the time the suit was filed or citation served upon him. This presents the only real controversy before us in this appeal.

The appellee, as a witness in his own behalf, testified as follows at the hearing:

"Q. Do you know Jesse Clay? A. Yes, sir.

"Q. A man generally referred to as Pony Man? A. Yes, sir.

"Q. How long have you known him? A. Since '44.

"Q. Since 1944? A. Yes, sir.

"Q. Have you known him quite well? A. Yes, sir.

"Q. Have you seen him quite frequently all down through the years? A. Yes, sir.

"Q. Many or few times? A. A few times.

"Q. You know where he lives? A. Yes, sir.

"Q. Do you know where he lived all during this year, Judge? A. Yes, sir.

\* \* \* \* \* \*

"Q. Have you ever been to Jesse Clay's house during this year? A. No, sir.

"Q. How many times have you been to his house? A. About four or five times.

"Q. Four or five times? A. Yes, sir.

"Q. Does he own his home? A. Yes, sir.

"Q. He owns his home there? A. Yes, sir.

"Mr. Musslewhite: We have our objection to all of this line of testimony, is that correct?

"The Court: Yes, sir.

"Q. And he owns his home there off of Keltys Street, Judge? A. Yes, sir.

"Q. And is he married? A. Yes, sir.

"Q. Does he have any children? A. Yes, sir.

"Q. Does his wife and children live there with him? A. His wife does, I don't know whether his children live there.

"Q. His wife lives there with him? A. Yes, sir.

\* \* \* \* \* \*

"Q. Judge, have you seen Jessie Clay in and around Lufkin the last two years? A. Yes, sir.

"Q. Many times or few times? A. A good many times.

"Q. Before this trouble happened were you and Jessie friends? A. Yes, sir.

"Q. Run around with him? A. Yes, sir.

"Q. You knew him pretty well, is that right Judge? A. Yes, sir.

"Q. You knew his wife? A. Yes, sir."

Based upon his knowledge of these facts, Judge Bryant· was permitted to further testify as follows:

"Q. Judge, have you known where Jessie Clay lived all of this year, 1953?

"Mr. Musslewhite: We object to that, it would be a conclusion of the witness, if the Court please.

"The Court: The objection is overruled.

"Mr. Musslewhite: Note our exception.

"Q. You say you did know where he lived? A. Yes, sir.

"Q. Where did he live, Judge? A. Over on Keltys Street.

"Mr. Musslewhite: We object to any statement about the residence of Jessie Clay because it would necessarily be a conclusion of this witness of what his residence or domicile might be.

"The Court: Objection overruled. You might have your objection to the same ruling of that part of the testimony without having to interrupt.

"Mr. Musslewhite: Will you note that in the record?

"Q. Where did he live during all of this year, Judge, Jesse Clay? A. Over on Keltys Street.

"Mr. Musslewhite: Now it is understood that we have our same objection to this?

"The Court: Yes, sir.

"Q. Off of what, Judge? A. Off of Keltys Street.

"Q. And in what town is that? A. That would be in this town.

"Q. In Lufkin? A. Yes, sir.

"Q. That is in Angelina County? A. Yes, sir.

"Q. And that is where you filed this lawsuit, is that correct, Judge? A. Yes, sir.

\* \* \* \* \* \*

"Q. Judge we filed your case here along about May 29th of this year? A. Yes, sir.

"Q. May 29, 1953, and was Jessie Clay living in this County at that time? A. Yes, sir.

"Q. Is he still living in this county? A. Yes, sir.

"Q. You know Jessie Clay well and know where he lives? A. Yes, sir."

On cross-examination, he testified as follows:

"Q. Now, Judge, I believe you said awhile ago that you hadn't been to where you thought Jessie Clay lived in about two years, is that right? A. I didn't understand you.

"Q. You said on direct examination that you have been to Jessie Clay's house, but that it had been about two years since you had been there? A. Let's see, I think so.

"Q. What? A. It has been longer than two years.

"Q. It has been longer than two years. A. Yes, sir.

"Q. You haven't been to where he was supposed to have lived in more than two years, is that right? A. Yes, sir.

"Q. You haven't visited in his home in more than two years? A. No, sir.

"Q. And you haven't visited or been to where he was supposed to have been living in more than two years? A. No, sir."

 Under authority of Justice O'Quinn's opinion in Smith v. Woods, Taylor & Co., Tex.Civ.App., 235 S.W. 720, in which the testimony was not as strong as that copied above and the witness had never been to the party's home, we hold that the evidence was not only admissible but also that it was sufficient to support the trial court's finding that Clay was a resident of Angelina County. The objections made to the reception of the testimony in evidence were practically identical with the objections made in the instant case by appellant. We believe that this testimony by the appellee is sufficient to support such finding by the trial court also because it is unchallenged by any other testimony. Clay himself in his controverting affidavit did not allege that he resided in any other county and did not deny that he was a resident of Angelina County. The fact that the witness had not seen Clay at his home since the shooting does not affect the strength of the unchallenged testimony that the witness had known Clay many years, had been good friends with him, and knew where he lived and he lived in Lufkin, in Angelina County. When Clay's residence was shown by the testimony to have been in Lufkin prior to the shooting in 1951, and nothing is shown as to a change in residence thereafter, it will be presumed that it continued to be there, and the burden was upon appellant to show otherwise. Stone v. Phillips, Tex.Civ. App., 171 S.W.2d 156, citing 15 Texas Jurisprudence 719.

We believe that the appellant has not shown error in the action of the trial court and the judgment will be affirmed.

Affirmed.